UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:20-cv-00182-Orl-78EJK

WILLIE TONEY, individually
and on behalf of all others
similarly situated,

    Plaintiff,

v.

ADVANTAGE CHRYSLER-DODGE-
JEEP, INC., ET AL.

    Defendants.

                                     /

**DEFENDANT SYNERGY MARKETING ADVISORS, INC.'S 12(b)(1) MOTION TO DISMISS AND 12(f) MOTION TO STRIKE**

Defendant Synergy Marketing Advisors, Inc. d/b/a Synergy Resource Advisors ("Synergy") files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of Article III Standing, and, in the alternative, Federal Rule of Civil Procedure 12(f) Motion to Strike Class Allegations.

                            **I.    Introduction**

Plaintiff claims that receiving a single, 27-second "ringless voicemail" is a sufficient injury to unlock the doors to federal court. That is simply not the case. As the Eleventh Circuit held in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), a TCPA plaintiff must satisfy the Article III injury-in-fact requirements all other federal litigants must meet. That means

individuals like Plaintiff, who suffer no real injury, cannot burden the federal judicial systems when they have suffered at most an exceedingly minor inconvenience.

Indeed, Plaintiff's grand injury claim is that he wasted *twenty-seven seconds* listening to a single message, and that his phone did not even ring when he received it. Simply put, the Constitution does not envisage individuals bringing federal lawsuits over a minor 27-second inconvenience. That's the amount of time of a single television commercial. Not an "injury" in any real sense of the word. Plaintiff's claim must therefore be dismissed for lack of Article III standing.

In the alternative, Plaintiff's class allegations should be stricken pursuant to Rule 12(f) because they represent an improper failsafe. That is, the class is defined according to the elements of Plaintiff's claim – and only the elements of Plaintiff's claim – rather than objective criteria:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a call using an artificial or prerecorded voice, promoting Advantage's goods or services from Defendants or anyone on Defendants' behalf, to said person's telephone number, without emergency purpose and without the recipient's prior express written consent.

(Compl. ¶ 60.)

This class definition is, quite literally, a mere recitation of the elements of Plaintiff's TCPA claim for alleged telemarketing messages. As such, class membership is defined solely by whether an individual has a valid claim: if they have a valid claim, they are in the class; if they do not have a valid claim, they are not in the class and are, therefore, not subject to res judicata or claim preclusion by virtue of class membership. That method of class adjudication is fundamentally unfair to defendants, and is therefore prohibited.

010-9119-7985/1/AMERICAS

## II.     Background

Plaintiff filed this putative class action under the Telephone Consumer Protection Act ("TCPA") because he allegedly received single "ringless voicemail." (Compl. ¶ 31.) According to the Amended Class Action Complaint ("Complaint"), the messages stated as follows:

> Hi, it's Buzz York, general manager at Advantage Chrysler Dodge Jeep and Ram in Mt. Dora calling with important information about your vehicle. Please call us as soon as possible to discuss at 352-461-1537. Again, the number 352-461-1537. Thank you.

(Compl. ¶. 32.)

"Plaintiff estimates that he has wasted twenty-seven seconds reviewing Defendants' unwanted message." (Compl. 4.)

Significantly, Plaintiff does not allege that receiving a single ringless voicemail ever caused his voicemail box to be full such that it could not receive other messages. Instead, he merely claims that a message "*like* Defendants' poses a real *risk* of ultimately rendering the phone unusable for voice messaging purposes." (Compl. ¶ 43.)

Under these allegations, Plaintiff seeks to represent the following class:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a call using an artificial or prerecorded voice, promoting Advantage's goods or services from Defendants or anyone on Defendants' behalf, to said person's telephone number, without emergency purpose and without the recipient's prior express written consent.

(Compl. ¶ 60.)

## III.    Rule 12(b)(1) Motion to Dismiss for Lack of Article III Standing

### A.    Rule 12(b)(1) Standard

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge a plaintiff's

3

lack of Article III standing in a motion to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because [Article III] standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."). Without Article III standing, a federal court has no subject matter jurisdiction over a plaintiff's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all" and "the only function remaining to the court is that of announcing the fact and dismissing the cause").

"The 'irreducible constitutional minimum' of Article III standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. The injury-in-fact element requires that the injury be both "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

"A court must dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. . . . [And] [t]he burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction." *Murphy v. Sec'y, United States Dep't of the Army*, 769 F. App'x 779, 782 (11th Cir. 2019). Plaintiffs thus have the burden of establishing each standing element. *Spokeo*, 136 S. Ct. at 1547. Where "a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id*.

4

**B.     Article III Requires A Real Injury; Not Generalized Annoyance or Wasted Time.**

In *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), the Eleventh Circuit held that a mere procedural violation of the TCPA does not confer standing. Guided by "history and the judgment of Congress," *id.* at 1168, the *Salcedo* court held that the plaintiff failed to allege facts plausibly showing that he suffered any *real* injury that Congress intended to protect through the TCPA, despite the plaintiff's generalized allegations of an invasion of privacy and nuisance. *Id.* at 1171-72.

As Eleventh Circuit recognized, Congress was primarily concerned with privacy interests tied to "the home when it enacted the TCPA." *Id.* at 1169-70 ("We consider the judgment of Congress when assessing standing because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." (internal quotation marks omitted)). Because "*Spokeo* instructs [courts] to consider the [actual] judgment of Congress . . . , [and] not to imagine what Congress might say about a harm it has not actually addressed," the Eleventh Circuit held that Congress' privacy "findings [that accompany] the TCPA . . . do not necessarily apply to [cellular phone-related functions, such as] text messaging." That is because "cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion." *See id.* at 1068-69.

Critically, the *Salcedo* decision found that Congress was simply "less . . . concern[ed] about calls to cell phones" when it enacted the TCPA than it was with calls involving home-based landlines. *Id.* at 1169-70, 73 ("Congress does not view tying up a phone line for five seconds as a serious intrusion" and "congressional silence [regarding the multitude of cellular functionalities outside the home] is a poor basis for extending federal jurisdiction to new types

5

of harm."). The court thus held that the injury-in-fact analysis must be "qualitative, not quantitative," and that courts must "qualitative[ly]" assess whether a plaintiff's TCPA claim actually involves a *real* harm that Congress intended to protect. *Id.* at 1172-73. Thus, "broad overgeneralization[s] of the judgment of Congress" beyond those specifically identified in the TCPA cannot confer standing. *Id.* at 1170.

The *Salcedo* court framed its analysis by acknowledging that "[n]ot every right created by Congress or defined by an executive agency is automatically enforceable in the federal courts." *Id.* at 1166. So framed, the Eleventh Circuit affirmed the dismissal of the *Salcedo* plaintiff's TCPA complaint because he had not "alleged that he was in his home when he received" any allegedly unwanted cellular communication, nor had the plaintiff "alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone" or "that his cell phone was searched, dispossessed, or seized for any length of time." *Id.,* at 1169-70, 72-73. Instead, with respect to an unwanted cellular communication, the *Salcedo* court found that the Constitution required *more than* plaintiff's generalized allegations of mere "los[t] . . . opportunity" and "time wasted only generally" in order to trigger Article III standing. *Id.* at 1168-69.

Taken as a whole, the *Salcedo* court found that "cell phone calls may involve less of [a privacy] intrusion than calls to a home phone," and, as such, the type of annoyance that the plaintiff actually alleged, *i.e.*, "[t]he chirp, buzz, or blink of a cell phone [after] receiving a single text message," simply did not rise to the level of a *real* underlying harm identified by Congress sufficient to meet Article III's injury-in-fact requirement. *Id.* at *1170, 72. Accordingly, the *Salcedo* plaintiff's failure to make specific allegations of any underlying *real*

harm tied to his congressionally demarcated privacy interests were decisive, and required dismissal of his complaint.

### C. Plaintiff Has Not Alleged A Concrete Injury-In-Fact

As discussed above, Article III requires an injury that "must actually exist" to confer standing. *See Spokeo*, 136 S. Ct. at 1548. Plaintiff does not come close to meeting this requirement. Instead, Plaintiff alleges that he spent a total of twenty-seven seconds listening to a single ringless voicemail from Defendants. (Compl. ¶¶ 31 & 42.) That type of generalized "time wasted" argument is simply not sufficient to establish an injury-in-fact. *Salcedo*, 936 F.3d at 1162.

Almost as important as what Plaintiff has alleged is what he has not alleged. Namely, Plaintiff has not alleged that anything approximating the type of intrusion into the home, disruption of daily activities in the home, or physical search of a cell phone the Eleventh Circuit held sufficient to confer standing in *Salcedo*. *See Salcedo*, 936 F.3d at 1169-70, 72-73 (describing the types of actual injuries that could confer standing in a TCPA case). Moreover, Plaintiff has not alleged that his cell phone ever rang when the alleged voicemails were transmitted. Accordingly, *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020), which held that more than one unwanted *call*, as opposed to a text, to a cell phone confers standing, does not apply.[1]

Indeed, Plaintiff alleges in the Complaint that the single message was a "ringless voicemail." (Compl. ¶ 31.) Even if a ringless voicemail is considered a call for general TCPA

---

[1] The Eleventh Circuit reached the same conclusion in *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019), regarding receipt of more than one unwanted call, rather than an unwanted text.

purposes, that does not mean it should be treated the same as an ordinary call for purposes of the standing analysis. A text message is also considered a call for purposes of the TCPA, but the Eleventh Circuit treats text messages and ordinary calls differently for purposes of standing. *See Glasser*, 948 F.3d at 1306 (stating that more than one unwanted calls confers standing, while unwanted text messages do not without additional allegations of harm). And as the Southern District of Florida recognized in a pre-*Salcedo* decision, "'ringless' voicemails are transmitted by essentially the same method used to transmit text messages to cellular telephones." *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1243 (S.D. Fla. 2019).

Thus, as with text messages, a ringless voicemail – as its name implies – does not occupy a cell phone in the same manner as a traditional call occupies, in that the phone does not "ring" for a period of time or render the phone in capable of performing other operations. Accordingly, as with the text messages at issue in *Salcedo*, a *ringless* voicemail *does not* include the type of incessant ringing that can disrupt an individual's quiet enjoyment of the home. *Salcedo*, 936 F.3d at 1169-70, 72-73 (holding that receipt of a text message does not include "anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone."); *see also Cordoba* 942 F.3d at 1270 (discussing how the ringing of a phone call creates more of an intrusion than a text message, which contains a single chirp or other notification of the received message rather than fully occupying the phone). Accordingly, even if receipt of more than one traditional phone calls does confer standing because the phone rings and the call occupies the phone fully, receipt of a single ringless voicemail or text message does not confer standing. *Cordoba* 942 F.3d at 1270-71.

8

Plaintiff has therefore not alleged any real injury of the type intended to be protected by the TCPA or an Article III court. Additionally, Plaintiff's own Complaint demonstrates that the "ringless voicemail" at issue here is more analogous to the "unwanted" text messages at issue in *Salcedo* than the "unwanted" calls at issue in *Glasser* and *Cordoba*. Plaintiff has therefore failed to meet his burden of pleadings facts that plausibly give rise to standing under Article III, and his Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

### IV. Rule 12(f) Motion to Strike Class Allegations

In the alternative to the motion to dismiss for lack of subject matter jurisdiction, Synergy respectfully requests that the Court strike Plaintiff's class allegations, because the class definition is an improper failsafe and is facially overbroad.

**A. Under Eleventh Circuit Law, Class Allegations Should be Stricken Under Rule 12(f) When They Are Facially Uncertifiable.**

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). A court should address whether to certify a purported class "[a]t an early practicable time," and if a court determines that the perquisites of Rule 23 cannot be satisfied, it may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23 (c)(1)(A), (d)(1)(D).

While in some instances, discovery may be needed to aid in the determination of

9

whether a class action is appropriate, "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 2017 (M.D. Fla. 2010) ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on the issue prior to the filing of a motion for class certification.") (quoting *Stan Smith v. Network Sols., Inc. and Verisign, Inc.*, 135 F. Supp. 2d 1159 (N.D. Ala. 2001)).

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) motion is "to clean up the pleadings, streamline the litigation, and avoid forays into immaterial matters." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and citation omitted). A motion to strike is particularly appropriate where allegations are prejudicial. *M.W. v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 139182, at *4-5 (striking irrelevant and prejudicial allegations from complaint).

A district court may strike a class definition at the pleadings stage when it is facially uncertifiable in a manner that discovery cannot cure. *See Vandenbrink v. State Farm Mut. Auto Ins. Co.*, 2012 U.S. Dist. LEXIS 108696, at *8 (M.D. Fla. Aug. 3, 2012) ("Where the [im]propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification."); *Lawson v. Life of the South Ins. Co.*, 286 F.R.D. 689, 701 (M.D. Ga. 2012) (striking class allegations where pleadings did not indicate, and discovery would not prove, that a class action could be certified).

Indeed, allowing a facially uncertifiable class to proceed beyond the pleading stage can result in significant prejudice to a defendant. The pleadings, including allegations of the complaint, govern the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Thus, in a TCPA case, permitting a facially uncertifiable class to proceed to discovery can result in a defendant being required to respond to burdensome and expensive discovery regarding every call it made during the class period on the grounds that each call could potentially be a TCPA violation—even though a class that broad could never be certified under Federal Rule of Civil Procedure 23. *See, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of the evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs); *Christian v. Generation Mortg. Co.*, 2014 U.S. Dist. LEXIS 127767, at *2 (N.D. Ill. Sept. 12, 2014) (acknowledging the burden and expense imposed by discovery in class actions).

**B.    Plaintiff's Class Allegations are Facially Uncertifiable.**

    **1.    Plaintiff's Proposed Class Definition is an Improper Failsafe.**

A court may not certify a "fail-safe class," which is a class that is "defined in terms of the legal injury." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015); *see also Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011) (explaining "improper fail-safe class" exists where "[e]ither class members win or, by virtue of losing, they are not in the class, and, therefore, not bound by the judgment."); *Kamar v. RadioShack Corp.,* 375 F. App'x. 734, 736 (9th Cir. 2010) (noting that a proposed class is failsafe, where class definition is "one that determines the scope of the class only once it is decided that a class

member was actually wronged").

A failsafe class is one that is defined according to the elements or merits of the underlying class claims, rather than on some objective criteria. *See Van Lith,* 2016 U.S. Dist. LEXIS 96853, at *15-16 (striking a class because it is the job of the plaintiff, not the court, to define a proper class); *see also Sauter v. CVS Pharmacy, Inc.,* No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *8 (S.D. Ohio May 7, 2014) (holding that a class definition was a failsafe because it included "only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of n ATDS and thus consisted solely of persons who can establish that defendant violated the TCPA"). Failsafe class definitions are therefore commonly struck at the pleadings stage because they are uncertifiable on their face. *See Van Lith v. iHeartmedia & Entertainment, Inc.*, No. 1:16-cv-066, 2016 U.S. Dist. LEXIS 96853, at *15-16 (E.D. Cal. July 25, 2016); *Olney v. Job.com, Inc.,* No. 1:12-cv-1724, 2013 U.S. Dist. LEXIS 141339 (E.D. Cal. Sept. 30, 2013) (holding that the original definition of a class in a TCPA case was an improper failsafe).

Allowing a failsafe class to proceed beyond the pleadings stage can also cause real prejudice to a defendant. The pleadings, including allegations of the complaint, govern the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). Thus, in a TCPA case, permitting a failsafe class to proceed to discovery can result in a defendant being required to respond to discovery regarding every call it made during the class period on the grounds that each call could potentially be a TCPA violation, even though a class that broad could never be certified. *See, e.g., Medina v. Enhanced Recovery*

12

*Co., Ltd. Liab. Co.*, No. 15-14342-CIV, 2017 U.S. Dist. LEXIS 186651 (S.D. Fla. Nov. 9, 2017) (requiring a defendant who neglected to challenge a failsafe class definition at the pleading stage to produce every record of consent for every dialer call it made during the class period and every complaint made by any consumer).

Plaintiff's proposed class is plainly a failsafe as the definition is simply a recitation of the elements of a TCPA claim regarding calls made to cellular telephones. The elements of Plaintiff's TCPA claim, and those of purported class members, are: 1) a prerecorded voice message; 2) to a cellular telephone; 3) from Defendants; 4) to promote goods or services; 5) for a non-emergency purpose; and 6) without prior express written consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff's proposed class definition includes those six elements, and only those six elements:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a call using an artificial or prerecorded voice, promoting Advantage's goods or services from Defendants or anyone on Defendants' behalf, to said person's telephone number, without emergency purpose and without the recipient's prior express written consent.

(Compl. ¶ 60.)

Defining the class by whether an individual provided prior express written consent is particularly problematic. By defining the class in that manner, the only way to determine whether an individual is in the class is to conduct a plaintiff-by-plaintiff analysis to see whether they, in fact, provided the requisite consent. That would not only delve into a series of mini trials, it would also improperly require the court to resolve a key factual and legal merits issue at the certification phase. The proposed classes are therefore blackletter examples of a failsafe as they merely recite the elements of a cause of action under the guise of a class definition. *See*

13

*Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."); *see also Messner v. Northshore Univ. HealthSystem, Inc.*, 669 F.3d 802, 825 (7th Cir. 2012) ("The problem posed by class members whose claims may fail on the merits for individual reasons is the obverse of a different problem with class definition: the problem of the 'fail-safe' class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."); *see also Dixon v. Monterrey Fin. Servs., Inc.*, 2016 U.S. Dist. LEXIS 111687, at *4-5 (N.D. Cal. Aug. 22, 2016) (striking a virtually identical class definition as an improper failsafe because "a determination of whether a person is a member of the class is dependent on whether he/she prevails on the merits of the TCPA claim...").

Making matters worse, not only is the class defined according to a merits question, it is defined according to a merits question that inherently requires an individualized inquiry – consent. *See, e.g.*, *Balthazor v. Cent. Credit Servs.*, No. 10-62435-CIV, 2012 U.S. Dist. LEXIS 182275, at *16 (S.D. Fla. Dec. 27, 2012) (denying certification of TCPA class under both Rule 23(b)(2) and 23(b)(3) based on finding that there could be no commonality under Rule 23(b)(2) where "consent is an individualized issue"); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 460 (M.D. Fla. 2018) (denying class certification in a TCPA action where individual inquiries regarding consent were "likely to dwarf the much simpler question of whether Defendant called a given class member with a prohibited system"); *Shamblin v. Obama*, 2015

U.S. Dist. LEXIS 54849, at *24-30 (M.D. Fla. Apr. 27, 2015) (denying class certification in a TCPA action where the issue of whether the subscriber consented to be called could not be resolved commonly across the class and was subject to individualized proof, including the "where, how and when" of how any consent was given); *Powell v. Youfit Health Clubs, LLC*, 2019 U.S. Dist. LEXIS 28843 (S.D. Fla., Feb. 22, 2019) (denying motion for reconsideration of order denying class certification in a TCPA case where consent to receive text messages from defendant was a central issue and an examination of each member's record was needed to determine what form of consent language appeared in his or her membership agreement).

Thus, even if Plaintiff could define the class according to a merits question – which he cannot under Eleventh Circuit law – the merits question he chose is too individualized to support certification, which also warrants striking the class under Rule 12(f).

### V.     Conclusion

Plaintiff alleges only generalized wasted time and annoyance, not a real injury sufficient to confer Article III standing. Plaintiff's Complaint should therefore be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Alternatively, Plaintiff's class definition is per se a failsafe, as it is defined solely according to the elements of the TCPA claim. Thus, if the Court declines to dismiss the claim under Rule 12(b)(1) for lack of standing, Synergy respectfully requests that Plaintiff's class allegations be stricken pursuant to Rule 12(f).

Dated:  September 18, 2020

Respectfully submitted,

*/s/ Jason Daniel Joffe*
Jason Daniel Joffe
Florida Bar No. 0013564
E-Mail: jason.joffe@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 S. Biscayne Blvd., Suite 4700
Miami, Florida  33131
Telephone:  (305) 577-7000
Facsimile:   (305) 577-7001

*Counsel for Defendant Synergy Marketing Advisors, Inc. d/b/a Synergy Resource Advisors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 18, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Jason Daniel Joffe*
Jason Daniel Joffe