# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**WILLIE TONEY,**

        **Plaintiff,**

v.                                                                   Case No: 6:20-cv-182-WWB-EJK

**ADVANTAGE CHRYSLER-
DODGE-JEEP, INC. and
STRATICS NETWORKS, INC.,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the undersigned, referred from the Court, on Plaintiff's Motion for Class Certification ("the Motion"). (Doc. 118.) Defendant Advantage Chrysler-Dodge-Jeep, Inc. (hereinafter "Advantage") opposes the Motion (Doc. 127),[1] and Plaintiff replied to the opposition brief (Doc. 130). Upon consideration, I respectfully recommend that the Motion be denied.

**I.     BACKGROUND**

Plaintiff brings this putative class action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (Am. Compl., Doc. 40.) Plaintiff alleges that on or about November 1, 2019, he started receiving "ringless

---

[1] Defendant Stratics Networks Inc. was not served until after the briefing for this Motion was completed. (Doc. 135.)

voicemails"[2] with the following prerecorded message:

> Hi, it's Buzz York, general manager at Advantage Chrysler Dodge Jeep and Ram in Mt. Dora calling with important information about your vehicle. Please call us as soon as possible to discuss at 352-461-1537. Again, the number [is] 352-461-1537. Thank you.

(Doc. 40 ¶¶ 31–32.) Plaintiff alleges that these voice messages were unsolicited and caused him actual harm—"wast[ing] twenty-seven seconds reviewing Defendants' unwanted message." (*Id.* ¶ 42.) As a result of Defendants' actions, Plaintiff brought this lawsuit, on behalf of himself and those similarly situated. (*Id.* ¶¶ 71–84.) In his Amended Complaint, Plaintiff defines the class as:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a call using an artificial or prerecorded voice, promoting [Advantage's] goods or services from Defendants or anyone on Defendants' behalf, to said person's telephone number, without emergency purpose and without the recipient's prior express written consent.

(*Id.* ¶ 60.)

Advantage answered the Amended Complaint (Doc. 44) on July 27, 2020, and since then, it and Plaintiff have been actively litigating this matter. Eight months later, Plaintiff filed the instant Motion.

---

[2] As the name implies, a ringless voicemail is a voicemail sent "straight to consumers' voicemail boxes." Irela Aleman, *Ringless Voicemails: How an Emerging Unregulated Technology May Hinder the Intent of Telephone Consumer Protection Act of 1991*, 71 Fed. Comm. L.J. 253, 266 (2019). Though the methods of transmitting the voicemail directly to the voicemail box vary, the end result is a voicemail without the disruption of a telephone call. *Id.* (emphasis added).

## II. STANDARD

Federal Rule of Civil Procedure 23(a) requires the movant to demonstrate the following when moving for class certification: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Eleventh Circuit has also required the class representative to have standing to sue and the proposed class to be adequately defined and clearly ascertainable. *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim"); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

After meeting the requirements of Rule 23(a), two additional requirements must be satisfied to certify a class under Rule 23(b)(3). First, the movant must show that the questions of law or fact common to the class members predominate over any questions affecting individual members. Fed. R. Civ. P. 23(b)(3). Second, the movant must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*

Instead of denying a request for class certification, a court may certify subclasses. Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *see also Pickett v. IBP, Inc.*,

197 F.R.D. 510, 516 (M.D. Ala. 2000) ("[U]nder Rule 23, [a court] can certify subclasses rather than deny a request for class certification."). "Even if subclassification is appropriate, the subclasses cannot be certified unless the party seeking certification can demonstrate that the requirements of Rule 23 are established." *Pickett*, 197 F.R.D. at 516.

Notice must be provided to all class members if a party attempts to certify a class under Rule 23(b)(3). *Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 305 (M.D. Fla. 2001). According to Federal Rule of Civil Procedure 23(c)(2), the notice should be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class . . . ." *Family Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 U.S. Dist. LEXIS 173255, at *12 (S.D. Ala. Dec. 14, 2016).

## III. DISCUSSION

Plaintiff seeks to certify the following class:

> All persons within the United States who during the four years prior to filing of this lawsuit (1) were sent a prerecorded message (2) using software provided by Stratics, and (3) where the prerecorded message directed the individual to contact Defendant [Advantage].

(Doc. 118 at 1.) In the alternative, Plaintiff seeks to certify the following subclasses:

> Service Subclass: All persons within the United States who during the four years prior to the filing of this lawsuit (1) were sent a prerecored message (2) using the software

provided by Stratics, (3) where the prerecorded message directed the individual to contact Defendant [Advantage], and (4) where Defendant [Advantage] exclusively obtained the individual's contact information as a result of the individual servicing their vehicle at Defendant [Advantage's] dealership and not from [Advantage's] website or as a result of the individual purchasing a vehicle from [Advantage].

Purchase Subclass: All persons within the United States who during the four years prior to the filing of this lawsuit (1) were sent a prerecorded message (2) using the software provided by Stratics, (3) where the prerecorded message directed the individual to contact Defendant [Advantage], and (4) where Defendant [Advantage] obtained the individual's contact information because of the individual purchasing a vehicle from [Advantage] and not from [Advantage's] website.

Website Subclass: All persons within the United States who during the four years prior to the filing of this lawsuit (1) were sent a prerecorded message (2) using the software provided by Stratics, (3) where the prerecorded message directed the individual to contact Defendant [Advantage], and (4) [Advantage] obtained the individual's contact information because of the individual imputing their information on [Advantage's] website.

No Evidence Subclass: All persons within the United States who during the four years prior to the filing of this lawsuit (1) were sent a prerecorded message (2) using the software provided by Stratics, (3) where the prerecorded message directed the individual to contact Defendant [Advantage], and (4) where Defendant [Advantage] did not obtain the individual's contact information as result of any of the following: (a) the individual purchasing a vehicle from [Advantage], (b) the individual imputing their information on [Advantage's] website, or (c) the individual servicing their vehicle at Defendant [Advantage's] dealership.

(*Id.* at 1–2.)

Advantage argues that the Court should not certify the class or the subclasses because Plaintiff fails to satisfy all of the Rule 23 requirements and standing. (Doc. 127.) For the reasons set forth below, I respectfully recommend that the Motion be denied.

### A. Standing

A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). This requires the plaintiff to establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but [] also [must] be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (internal quotation marks omitted). Therefore, the Court must determine that at least one named class representative has Article III standing to raise each class claim or subclaim. *Prado–Steiman*, 221 F.3d at 1279.

In the Amended Complaint, Plaintiff alleges that he, and others similarly situated to him, received a "ringless" voicemail with a pre-recorded message from Advantage. (Doc. 40 ¶¶ 31, 59.) The Eleventh Circuit has yet to provide binding authority on the issue of standing with a ringless voicemail; however, this issue has

been addressed on several occasions at the district court level and in unpublished appellate decisions.

When a standing challenge to a "ringless" voicemail TCPA action is based on a legal argument, e.g., a "ringless" voicemail is not a "call" under the TCPA, courts routinely find the plaintiff has standing to bring the TCPA action. *See Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1250–51 (S.D. Fla. 2019) (finding that a plaintiff alleged "injury in fact" when the complaint contained allegations about "invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, . . . conversion[,] . . . . disrupt[ion] [of] . . . daily life[,]" and the inability to block ringless voicemails) (collecting cases); *Silbaugh v. CenStar Energy Corp.*, No. 1:18 CV 161, 2018 WL 4558409, at *2–3 (N.D. Ohio Sept. 21, 2018) (rejecting the defendant's argument that the complaint should have contained allegations about loss of money or property to properly allege injury in fact).

On the other hand, on a challenge to factual standing, the Eleventh Circuit has found, in an unpublished opinion, that there was no injury in fact in a "ringless" voicemail TCPA action. *Grigorian v. FCA US LLC*, 838 F. App'x 390, 394 (11th Cir. 2020) (finding that a plaintiff who "provided facts that she lost personal time listening to the voicemail . . . [but not] facts to show that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time.") (unpublished).[3] In sum: during a legal standing challenge to a "ringless"

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

voicemail TCPA claim, a court determines whether a plaintiff *alleged* standing; in contrast, a court should evaluate the evidence pertinent to a plaintiff's standing to bring the TCPA claim when there is a factual challenge.

In the instant action, Advantage raises a factual standing challenge: because Plaintiff "routinely cleaned out his voicemail box and had room for additional messages," he has failed to allege an injury in fact. (Doc. 127 at 6.) The *Grigorian* decision suggests that the Court must review any facts Plaintiff provided indicating whether he "was unable to receive legitimate calls or messages for any period of time." 838 F. App'x at 394. Moreover, *Grigorian* must be considered in light of the Eleventh Circuit's binding decision in *Brown v Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). The *Brown* Court held that at the class certification stage, "if a question of fact or law is relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." 817 F.3d at 1234 (finding that the district court misstated the law that all allegations in the complaint are taken as true when evaluating whether to certify a class) (citing *Comcast*, 133 S. Ct. at 1432–33; *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir.2001); and *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365–66 (4th Cir. 2004)).

> The party seeking class certification has a burden of *proof,* not a burden of pleading. He must affirmatively demonstrate his compliance with Rule 23 by proving that the requirements are "*in fact*" satisfied. And the district court must conduct a rigorous analysis to determine whether the movant carried his burden, which will

> frequently entail overlap with the merits of the plaintiff's underlying claim.

*Id.* (italics in original) (internal citations and quotations omitted). Thus, at this stage, Plaintiff is required to provide factual evidence to establish that receiving the "ringless" voicemail rendered his phone unavailable for other calls or messages. He has failed to do so in the Amended Complaint; thus, the undersigned finds that Plaintiff has failed to establish he has Article III standing for receiving a "ringless" voicemail. Without Article III standing, the undersigned cannot recommend class certification.

However, between the filing of his Amended Complaint and the instant Motion, Plaintiff changed his rendition of the events underlying his TCPA claim. Plaintiff now asserts in his Motion and during his January 2021[4] deposition that his phone rang, *then* he listened to the voicemail that was left on his phone from the telephone call. (Doc. 118 at 13); (Doc. 118-7 at 26:9–17; 32:21–25 (Plaintiff testified that he let an incoming phone call "go to voicemail.")). In essence, Plaintiff states the voicemail was not "ringless." Plaintiff does not attempt to reconcile this discrepancy in the Motion.

Advantage implies that Plaintiff is stretching the truth when asserting his phone rang but does not provide any evidentiary support indicating otherwise. (Doc. 127 at 2, 10–11, 16.) Without competing evidence, the undersigned cannot conclusively find that Plaintiff's phone *did not* ring prior to receiving the voicemail. It is notable that Plaintiff has yet to seek leave to amend his operative complaint to reflect this change

---

[4] The deposition transcript provides that Plaintiff's deposition occurred on January 22, 2022. (Doc. 118-7 at 1.) The undersigned construes this as a scrivener's error, with the correct date being January 22, 2021.

in testimony;[5] but out of an abundance of caution, the undersigned will also evaluate whether Plaintiff has standing under these new circumstances.

Plaintiff argues that he has standing because "receipt of a single unsolicited phone call . . . and a voicemail recording constitute[s] an injury in fact for the purposes of standing" (Doc. 118 at 13 (citing *Cordoba v DirectTV LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) (internal quotations omitted).) While that quotation is accurate, it is not what the *Cordoba* Court actually held. What Plaintiff quotes is the *Cordoba* Court's summary of a Third Circuit case that it relied upon in reaching its holding that "receipt of *more than one* unwanted telemarking call . . . is a concrete injury that meets the minimum requirements of Article III standing."[6] *Cordoba*, 942 F.3d at 1270. Plaintiff

---

[5] The undersigned recognizes there was only a week between Plaintiff's deposition and the filing of the instant Motion; however, nothing has prevented Plaintiff from moving to amend his complaint since that time to correct the factual contentions therein.

[6] The entirety of the *Cordoba* Court's discussion is as follows:

> For these reasons, the Third Circuit held, after *Spokeo* was decided, that the receipt of a single unsolicited call to a cell phone and a voicemail recording constituted an injury in fact. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017). There, the court explained that "Congress squarely identified this injury" in the TCPA and that this harm bore a close relationship to the kind of harm that would have given rise to the common law cause of action of "intrusion upon seclusion." *Id.* at 351; *see also Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017) (holding that a plaintiff had standing to sue for a violation of the Video Privacy Protection Act, which Congress enacted "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes" (quotation omitted)). We agree. The receipt of more than one

has not provided the undersigned with any evidence that he received "more than one unwanted telemarketing call" or binding authority that receipt of a single phone call with a voice message constitutes an injury in fact for Article III standing purposes. Thus, I conclude that Plaintiff does not have standing even under his alternative rendition of events.

### B. Typicality

Assuming, arguendo, that Plaintiff received a phone call with a prerecorded message and has standing, the undersigned cannot recommend that the Court certify the putative class because Plaintiff's harm is not typical.

The third prong of Rule 23(a) requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This prerequisite focuses on determining whether there is a sufficient nexus between the class representative's claims and those of the class at large. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008). Specifically, the "class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)." *Id.* There is a sufficient nexus if the class representatives' claims and the potential class members' claims arise from the same event, pattern, or practice and are based on the same theories. *Ault v.*

> unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing.

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019).

- 11 -

*Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

Plaintiff argues that there is typicality because he and the putative class members "were subjected to the almost identical prerecorded marketing messages [from Advantage] . . . through the Statics Platform in violation of the TCPA." (Doc. 118 at 18.) Simply because both the putative class members and Plaintiff heard the same message does not mean that there is typicality. The undersigned recognizes that a ringless voicemail is considered a call under the TCPA schema. However, there is a difference between the "call" Plaintiff now claims to have received versus the "call," i.e., the ringless voicemails, the remaining putative class members received.[7] Plaintiff claims that his phone rang, as if he was receiving a regular telephone call, and when he did not answer, a voicemail was left on his telephone. The putative class members received "ringless voicemails." Thus, their telephones never rang; instead, a voicemail just appeared in the voicemail box. Following *Grigorian,* the putative class members would have to show that the ringless voicemails rendered their phones inoperable for a period of time. Conversely, what Plaintiff must demonstrate is that he received more than one unsolicited phone call. *Cordoba*, 942 F.3d at 1270. Accordingly, I respectfully recommend that the Court deny the Motion for lack of typicality as well.

---

[7] Plaintiff did not brief typicality under the "ringless voicemail" facts alleged in the Amended Complaint; therefore, the undersigned does not consider whether he would satisfy the typicality requirement under that scenario.

## IV.   RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **DENY** the Motion (Doc. 118).

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 27, 2021.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record